# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————————

№ 24-CV-06929 (RER) (RML)

————————————————

RASHEED KHAN, TIMOTHY HUGH, AND STANLEE CASTILLO

VERSUS

MEEP NEW YORK, INC., SAM AHMED, AND NOUMAN AHMED

————————————

**MEMORANDUM & ORDER**

————————————

**RAMÓN E. REYES, JR., District Judge:**

Plaintiffs Rasheed Khan ("Khan"), Timothy Hugh ("Hugh"), and Stanlee Castillo ("Castillo") (collectively, "Plaintiffs") bring this action against their employer and two of their former managers for various employment discrimination and labor law violations. Defendants move for partial dismissal of the amended the complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Further, Defendants move to stay the proceedings with respect to Plaintiffs' New York Labor Law ("NYLL") § 191 claims. After carefully reviewing the record, and for the reasons set forth herein, defendants' motions are DENIED.

## BACKGROUND[1]

Plaintiffs are former employees of defendant Meep New York, Inc., d/b/a Mega Elevator Parts ("Mega Elevator"), where they were supervised by Defendants Sam Ahmed ("Sam") and Nouman Ahmed ("Nouman").[2] (ECF No. 17 ("Am. Compl.") ¶¶ 10, 17–18, 23–24, 31, 50, 86, 112). Mega Elevator is an elevator parts distributor. (*Id.* ¶¶ 10, 47). Sam is the Director of Operations and Nouman is the Operations Manager at Mega Elevator. (*Id.* ¶¶ 17, 23).

In October 2024, Plaintiffs brought this action against Defendants. (ECF No. 1 ("Compl.). On February 25, 2025, Plaintiffs filed the first amended complaint, asserting claims for race discrimination and retaliation under 42 U.S.C. § 1981 ("section 1981"); discrimination, retaliation, and aiding and abetting under the New York State Human Rights Law, N.Y. Exec. Law §§ 296, et seq. ("NYSHRL"); discrimination, retaliation, and aiding and abetting under the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107 et seq. ("NYCHRL"); and wage violations and whistleblower retaliation under the NYLL §§ 191(1)(a), 740(2) ("NYLL"). (Am. Compl. ¶ 2). Plaintiffs seek declaratory relief, compensatory and punitive damages, unpaid wages and benefits, interest, and fees. (*Id.* at 19–20).

---

[1] The Court acknowledges and offers its deep gratitude to Cecilia Rodriguez, a judicial intern and second-year law student at City University School of Law, for her assistance in researching and drafting this memorandum and order.

[2] The facts are taken from the complaint and assumed to be true for the purposes of this memorandum and order. *See Vaughn v. Phoenix House New York, Inc.*, 957 F.3d 141, 145 (2d Cir. 2020).

All three Plaintiffs allege that Defendants discriminated against them on the basis of their race (Black or Black and Indian) and Plaintiffs Khan and Hugh allege that Defendants discriminated against them on the basis of their national origin (Guyanese); and subjected them to dangerous working conditions. (*Id.* ¶¶ 1–2, 122–27, 133–40, 145–64). Plaintiffs further allege that Defendants retaliated against them after they complained about discriminatory language and hazardous working conditions. (*Id.* ¶¶ 1–2, 128–32, 141–44, 169–72). Finally, Plaintiffs allege that Mega Elevator did not pay them properly under New York law. (*Id.* ¶¶ 165–68).

Plaintiff Khan worked as a wire cutter and supervisor of wire cutting operations at Defendants' Long Island City warehouse (the "Warehouse") between December 2018 and April 2024. (*Id.* ¶¶ 31, 34, 36, 112). He is Black, Indian, and of Guyanese national origin. (*Id.* ¶¶ 44–45). Defendants paid Khan $12 an hour, less than the New York City minimum wage at the time that his employment began in 2018. (*Id.* ¶ 32). Khan spent more than 25% of his working hours performing manual labor servicing elevator motors, cutting electrical wiring, and cleaning the Warehouse. (*Id.* ¶ 37). Sam gave Khan positive feedback for performance of his work duties. (*Id.* ¶ 38). Khan heard Sam making racially motivated comments about Black workers "on a near daily basis." (*Id.* ¶ 43).

Plaintiff Hugh worked as a manager at Defendants' Warehouse between May 2021 and April 2024. (*Id.* ¶¶ 50, 112). Like Khan, Hugh is Black, Indian, and of Guyanese national origin. (*Id.* at ¶ 67). Hugh spent more than 25% of his working hours performing manual labor cutting electrical wiring, loading equipment, and performing general maintenance. (*Id.* ¶ 53). Sam gave him positive feedback for performance of his duties. (*Id.* ¶ 54).

Plaintiff Castillo worked as a wire technician in the Warehouse between October 2023 and April 2024. (*Id*. ¶¶ 86, 112). He spent over 25% of his working hours performing manual labor cutting electrical wiring, operating a forklift, and packing electrical wiring. (*Id*. ¶ 90). Castillo is Black. (*Id*. ¶ 96). Like Khan and Hugh, Castillo heard Sam make "near daily" racially targeted comments at the Warehouse. (*Id*. ¶¶ 43, 95). In particular, Sam referred to Plaintiffs and other Black employees as "those [N-words]." (*Id*. ¶ 97).

Plaintiffs allege that Defendants were maintaining an unsafe work environment. (*Id.* ¶ 55). Defendants failed to ventilate the Warehouse, leading to a buildup of dust; failed to provide heat in the Warehouse during the winter months; and failed to address a rat infestation in Plaintiffs' workspace. (*Id*. ¶¶ 55–58). Defendants did not provide Plaintiffs with proper personal protective equipment or industry standard respirators, instead providing them with cloth medical masks. (*Id*. ¶¶ 59–60). Further, Defendants failed to provide Plaintiffs with drinking water, access to a working bathroom, or functioning tools. (*Id*. ¶¶ 61–63).

When Hugh complained to Sam about the unsafe conditions in or around August 2021, Sam ignored the complaint and began to assign Hugh additional tasks. (*Id*. ¶¶ 64–66). In or around September 2021, Sam began to make comments toward Hugh, generalizing about Hugh's race and national origin.[3] (*Id*. ¶¶ 67–71). In February 2022, Hugh overheard Sam say of another Black employee, "workers like him we keep around

---

[3] Sam referred to Guyanese people as "your kind" to Hugh. (*Id*. ¶ 68). Sam "repeatedly" told Hugh that Guyanese people were "good in this field" and that Defendants should hire more Guyanese people." (*Id.* ¶ 69). Hugh took the comments as "condescending and racist" because it "implied that [Guyanese employees] were not meant for an office, i.e., not intelligent, and only good for grunt work." (*Id.* ¶ 70).

4

to tell them to stack bricks over here and unstack them over there, that's all they are good for;" and that the employee was "too ghetto" for a professional workplace. (*Id*. ¶¶ 72–74). That July, Hugh heard Sam refer to a Latino employee by a derogatory name. (*Id*. ¶ 77). In or around August 2022, Hugh and the Latino employee complained to Sam about unsafe working conditions at the Warehouse. (*Id*. ¶ 78). In reply, Sam said "I'll slap the fuck out of you" and "get the fuck out of here and go back and cry to your family we don't want to hear it in the warehouse." (*Id*. ¶¶ 79, 81).

On or around November 8, 2022, Hugh created a group chat message, including coworkers and managers from Mega Elevator, to express employees' concerns about the comments and unsafe working conditions. (*Id*. ¶ 83). Defendants terminated Hugh the same day. (*Id*. ¶ 84). Defendants rehired Hugh in February 2023 (*Id*. ¶ 85).

Shortly after Castillo began working for Defendants, in October 2023, he brought his concerns about the Warehouse's poor ventilation and the excess of dust throughout the space to Sam. (*Id*. ¶ 93). Though Sam assured Castillo he would fix the issues and provide proper personal protective equipment, he never did. (*Id*. ¶ 94). Castillo observed Defendants Sam and Nouman assigning arbitrary tasks to Black employees with the sole purpose of making fun of and humiliating those employees; and making racist comments about those employees. (*Id*. ¶¶ 98, 100). Sam and Nouman would assign a Black worker to move a pile of bricks from one place to another, only to have them move the pile back to its original location with no business-related purpose. (*Id.* ¶ 99). Castillo also overheard Sam and Nouman state that "Blacks are easy to overwork." (*Id.* ¶ 100). On another occasion, Sam and Nouman told Castillo that they "were grateful some of the employees

5

could not speak English because they were able to underpay the employees who could not speak English." (*Id.* ¶ 102).

On or around April 17, 2024, all Plaintiffs met with Sam and Nouman to discuss their concerns about the unsafe work conditions at the Warehouse. (*Id.* ¶ 107). In response to their complaints, Sam shouted, "if it is not making sense the door is that way." (*Id*. ¶ 108). When Plaintiffs said they would not quit, Sam threatened to suspend them and called them N-words. (*Id*. ¶ 109–10). Plaintiffs then complained of Sam's use of the offensive term. (*Id*. ¶ 111). On or around the day of the April 17 meeting, Defendants fired Plaintiffs. (*Id*. ¶ 112).

Defendants move for partial dismissal of the amended the complaint for failure to state a claim upon which relief can be granted. (ECF Nos. 24-1 ("Defs.' Mot."), 24-2 ("Defs.' Mem.")). Defendants move to dismiss the following claims: race discrimination under section 1981; race and national origin discrimination under NYSHRL; race and national origin discrimination under NYCHRL; and whistleblower retaliation under NYLL. (*Id.* at 7). Further, Defendants move to stay all proceedings as to Plaintiffs' frequency of pay claim under NYLL. (*Id.* at 21). Plaintiffs oppose. (ECF No. 24-3 ("Pl.'s Opp'n")). Defendants reply. (ECF No. 24-4 ("Defs.' Reply")).

## **LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

6

the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Courts draw all reasonable interferences in favor of the plaintiff. *Vaughn v. Phoenix House N.Y.*, Inc., 957 F.3d 141, 145 (2d Cir. 2020). Factual allegations in a complaint are assumed to be true, however, this tenet does not apply to "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

I.    Plaintiffs' NYLL Claims Survive Dismissal

A.  Plaintiffs' NYLL Section 191(1)(a) Claims Should Not Be Stayed

NYLL section 191(1)(a) ("section 191") provides that "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned[.]" N.Y. Lab. Law § 191(1)(a). A manual worker is defined as "a mechanic, workingman or laborer." N.Y. Lab. Law § 190(4). The New York Department of Labor has construed "manual worker" to include "individuals who spend more than 25% of working time engaged in 'physical labor.'" *Frequency of Pay Frequently Asked Questions*, N.Y. Dep't of Labor, https://perma.cc/9TZ4-QNWG. Therefore, Plaintiffs fall within the statutory definition for manual workers. (*See* Am. Compl. ¶¶ 37, 53, 90). Defendants do not contest that Plaintiffs were manual workers, so for the purposes of this motion, the Court assumes, without deciding, that Plaintiffs indeed were manual workers.

There is a split between the First and Second New York Appellate Divisions as to whether section 191 creates a private right of action and an ability to collect damages. *Compare Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144 (1st Dep't 2019), *with Grant v. Global Aircraft Dispatch, Inc.*, 223 A.D.3d 712 (2d Dep't 2024). In *Vega,* the

7

First Department held that section 191 creates a private right of action because late payments count as underpayment. *Vega*, 175 A.D.3d at 1146. In contrast, the *Grant* court held that there is no private right of action under the statute, and that late payments do not constitute underpayment or nonpayment. *Grant*, 223 A.D.3d at 719–20. This issue is pending before the New York Court of Appeals. See Motion for Leave to Appeal, *Grant v. Global Aircraft Dispatch, Inc.*, No. 2021-03202 (N.Y. App. Div. 2d Dep't Feb. 15, 2024).

Since the *Grant* ruling, "almost all district courts in this circuit have predicted that the Court of Appeals would side with *Vega* and hold that there is either an express or implied private right of action for late payment of wages," and have proceeded with review of section 191 claims. *Bryant v. Buffalo Exch., Ltd.*, No. 23 Civ. 8286 (AS), 2024 WL 3675948, at *3 (S.D.N.Y. Aug. 6, 2024). This Court agrees. *See Jones v. Mega Home & Linen, Inc.*, No. 22-CV-6010 (RER)(CLP), 2024 WL 6986809, at *5–6 (E.D.N.Y. Sept. 27, 2024).

Accordingly, Defendants' request to stay all proceedings with respect to Plaintiffs' section 191 claims is denied.

B.  Plaintiffs' NYLL Section 740(2) Claims Survive Dismissal

NYLL section 740(2) ("section 740(2)" or the "whistleblower law") provides that:

An employer shall not take any retaliatory action against an employee, whether or not within the scope of the employee's job duties, because such employee does any of the following:

a.  discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety;

b.  provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any such activity, policy or practice by such employer; or

c.  objects to, or refuses to participate in any such activity, policy or practice.

N.Y. Lab. Law § 740(2).

To state a claim under section 740(2), a plaintiff must allege: "(1) activity protected by the statute; (2) retaliatory action; and (3) some causal connection between the protected activity and the adverse action." *Callahan v. HSBC Sec. (USA) Inc.*, 723 F. Supp. 3d 315, 326 (S.D.N.Y. 2024). Plaintiffs are not required to identify the specific law, rule or regulation they reasonably believe their employers violated, "but they must identify the particular activities, policies or practices in which the employer allegedly engaged that form the basis of the employee's reasonable belief." *Pardo v. Tomas Infernuso DVM, P.C.*, No. 24-CV-00190 (NCM) (ST), 2024 WL 4276204, at *5 (E.D.N.Y. Sept. 24, 2024) (citation omitted).

Plaintiffs plausibly allege activity protected under section 740. Plaintiffs objected to dangerous working conditions at the Mega Elevator Warehouse that they reasonably believed were in violation of law. When Plaintiffs approached Defendants about the lack of working bathrooms, ventilation, personal protective equipment, and heat in winter; and about an unaddressed rat infestation in the Warehouse, Plaintiffs objected to dangerous working conditions that they reasonably believed were in violation of the law. (*See* Am. Compl. ¶¶ 57–59, 61, 93, 107).

Plaintiffs plausibly allege a retaliatory action. "'Retaliatory action' means an adverse action taken by an employer or his or her agent to discharge, threaten, penalize, or in any other manner discriminate against any employee . . . exercising his or her rights . . . including . . . discharge, suspension, or demotion[.]" N.Y. Lab. Law § 740(1)(e)). In his immediate response to Plaintiffs' complaints, Sam replied, "the door

9

is that way." (*Id.* ¶ 108). Then, when Plaintiffs would not leave, he threatened to suspend them. (*Id.* ¶¶ 109–110). Plaintiffs were terminated immediately after their conversation. (*Id.* ¶ 112). Sam's threats after Plaintiffs raised complaints about the safety of the Warehouse, and Plaintiffs' firing on or around the day they raised those complaints, qualify as retaliatory personnel action for the purposes of section 740. *See* N.Y. Lab. Law § 740(1)(e).

Plaintiffs plausibly allege that Defendants' retaliatory action was causally connected to Plaintiffs' protected activity. "Causation can be supported at the pleading stage with allegations of (i) 'direct evidence of retaliatory animus' or (ii) indirect evidence of causation 'through temporal proximity to the protected activity' or 'a backdrop of continuing antagonism and frustration of [ ] professional ambitions.'" *Pardo,* 2024 WL 4276204, at *6 (quoting *Duplan v. City of New York*, 888 F.3d 612, 625–626 (2d Cir. 2018)); *see also Delaney v. HC2, Inc.*, 761 F. Supp. 3d 641, 676 n.26 (S.D.N.Y. 2025). "Indirect support of causation can be established 'by showing that the protected activity was closely followed in time by the adverse employment action.'" *Pardo,* 2024 WL 4276204, at *6 (quoting *Tafolla v. Heilig*, 80 F.4th 111, 125–26 (2d Cir. 2023)). Defendants fired Plaintiffs immediately after they raised complaints about unsafe working conditions at the Warehouse. (Am. Compl. ¶¶ 108–110). Sam's comments threatening suspension and termination in response to Plaintiffs' complaints further demonstrates "retaliatory animus" and "a backdrop of continuing antagonism". *Pardo,* 2024 WL 4276204, at *6. The Second Circuit has found a causal connection where the defendant employer discharged the plaintiff less than two months after their complaint. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir.1998)). Here, Defendants terminated Plaintiffs'

employment with even greater temporal proximity, as they fired Plaintiffs on or around the day Plaintiffs raised their complaints to Defendants. (Am. Compl. ¶ 112). This successfully establishes indirect causation between Plaintiffs' protected activity and Defendants' adverse action against them.

Accordingly, Plaintiffs meet the requirements for a *prima facie* section 740(2) claim, and Defendants' motion to dismiss the claim for failure to state a claim is denied.

II.      Plaintiffs' Discrimination, Hostile Work Environment,
         <u>and Retaliation Claims Survive Dismissal</u>

Plaintiffs assert claims of discrimination, harassment, and retaliation against each Defendant. Plaintiffs allege that Mega Elevator engaged in unlawful race- and national-origin–based discrimination, subjected Plaintiffs to a hostile work environment, and retaliated against them for opposing discriminatory practices and complaining about workplace conditions, in violation of 42 U.S.C. § 1981, the NYSHRL, and the NYCHRL. (Am. Compl. ¶¶ 2, 122–44, 149–60). Plaintiffs further allege that Defendants Sam and Nouman, acting individually and as agents of Mega Elevator, personally participated in, aided and abetted, and were otherwise affirmatively linked to the discriminatory, harassing, and retaliatory conduct prohibited by those statutes. (*Id.* ¶¶ 2, 145–48, 161–64). Plaintiffs seek relief against all Defendants for their respective roles in the alleged discrimination, hostile work environment, and retaliation.

A. <u>Plaintiffs' Section 1981 Claims</u>

42 U.S.C.§ 1981 proscribes discrimination in public or private non-governmental settings, enumerating the right "to make and enforce contracts." 42 U.S.C. § 1981(a), (b). It therefore "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson v.*

*Cnty. of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004). There are several theories of liability under section 1981, including intentional race discrimination and hostile work environment. *Littlejohn v. City of New York*, 795 F.3d 297, 311–15, 320–21 (2d Cir. 2015). Plaintiffs bring claims under the theories of race discrimination and hostile work environment. (Am. Compl. ¶ 124).

### a.  Plaintiffs Sufficiently Pleaded Section 1981 Racial Discrimination

To establish a claim of intentional race discrimination under section 1981, "plaintiffs must allege facts supporting the following elements: (1) plaintiffs are members of a racial minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities." *Brown v. City of Oneonta, New York*, 221 F.3d 329, 339 (2d Cir. 2000) (citation omitted). These activities include the right to make and enforce contracts. *Id.* At the motion to dismiss phase, plaintiffs "need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d 297 at 311. A plaintiff must also plead a causal link that "but for" their race the alleged harm or loss of a protected right would not have occurred. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

Courts may derive an inference of discriminatory intent from a variety of circumstances, including "the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 311 (citation omitted). "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group." *Id*. at 312. "Termination is perhaps the quintessential example of an adverse employment action that a plaintiff must plausibly allege to survive

12

a motion to dismiss a racial discrimination claim." *Moore v. Hadestown Broadway LLC*, 722 F. Supp. 3d 229, 250 (S.D.N.Y. 2024).

Plaintiffs lay out a five-year period during which Defendants directed "near daily" racial slurs towards Plaintiffs and other Black employees, racially stereotyping them and assigning humiliating work only to Black employees. (*See* Am. Compl. ¶¶ 43, 46, 73, 74, 98). Therefore, the amended complaint plausibly supports "a minimal inference of discriminatory intent." *Littlejohn*, 795 F.3d at 312.

Defendants argue that Plaintiffs' allegations fail the *Comcast* "but-for" causation test because Plaintiffs do not allege that they were terminated based on race, instead alleging that they were terminated based on complaints about working conditions. (Defs.' Mem. at 10). Defendants contend that Plaintiffs fail to establish causation because Plaintiffs did not suffer adverse employment actions other than termination and were praised for their work. (*Id.*) Defendants also assert that Plaintiffs made no allegations in the amended complaint that their working conditions were tied to race. (*Id.* at 9–11). However, the facts on which Defendants rely are not dispositive as to the presence of race as a but-for cause of Plaintiffs' alleged harm. Indeed, "[t]here may be more than one but-for cause of a discriminatory action." *Kosher Ski Tours Inc. v. Okemo Ltd. Liab. Co.,* No. 20 Civ. 9815 (VB), 2023 WL 8720273, at *7 (S.D.N.Y. Dec. 18, 2023). The Court agrees with Plaintiffs that the causal connection between their termination and Defendants' racial animus is far from remote. Sam's use of the n-word while firing Plaintiffs (Am. Compl. ¶¶ 110–111), establishes race as one but-for because of their termination, which courts view as a "quintessential example" of an adverse employment action capable of surviving a motion to dismiss. *Moore,* 722 F. Supp. 3d at 250. Taken

together with Defendants' conduct towards Plaintiffs and other employees, Plaintiffs plausibly allege that their race was one but-for cause for Defendants' discriminatory action.

Accordingly, Defendant Mega Elevator's motion to dismiss Plaintiffs' section 1981 discrimination claims is denied.

"The burden for pleading individual liability under § 1981 is not high." *Hooda v. Brookhaven Nat. Lab'y*, 659 F. Supp. 2d 382, 391 (E.D.N.Y. 2009). "A plaintiff need only 'demonstrate some affirmative link to causally connect the actor with the discriminatory action.'" *Id.* (quoting *Patterson*, 375 F.3d at 229). Plaintiffs plausibly allege that Sam and Nouman are affirmatively linked to the discriminatory actions against Plaintiffs. While acting as Plaintiffs' managers before and during Plaintiffs' firings, they used racially degrading language towards Plaintiffs and other Black employees and personally assigned meaningless tasks to Black employees. (*See* Am. Compl. ¶¶ 17–18, 23–24, 73–75, 97–100, 110–111).

Accordingly, Defendants Sam and Nouman's motion to dismiss Plaintiffs' section 1981 discrimination claims is denied.

b.  Plaintiffs Sufficiently Pleaded Section 1981 Hostile Work Environment

A typical section 1981 hostile work environment claim involves a workplace that is "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]'" *Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 223 (E.D.N.Y. 2018) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "To state a hostile work environment claim, a plaintiff must plead conduct that '(1) is objectively severe or

14

pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected status]." *Rodriguez v. Town of Ramapo*, 412 F. Supp. 3d 412, 444 (S.D.N.Y. 2019) (quoting *Patane v. Clark*, 508 F.3d 106,113 (2d Cir. 2007) (per curiam).

"[T]he Second Circuit has directed that in determining whether the plaintiff suffered an atmosphere of hostility, courts must look to the totality of all the circumstances." *Anderson v. Nassau Cnty. Dep't of Corr.*, 558 F.Supp.2d 283, 294 (E.D.N.Y. 2008). In making this determination, "[t]he Court will look to various factors, which 'may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Amaya*, 295 F. Supp. 3d at 244. When the same individual engages in some harassment that is explicitly discriminatory and some that is not, their entire course of conduct is relevant to establishing a hostile work environment claim. *Rasmy v. Marriott Int'l Inc.*, 952 F.3d 379, 388 (2d Cir. 2020). To survive a motion to dismiss, a plaintiff "need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse[.]'" *Patane*, 508 F.3d at 113 (quoting *Terry v. Ashcroft*, 336 F.3d 128,148 (2d Cir. 2003)).

Defendants correctly contend that Plaintiffs' amended complaint does not make a hostile work environment theory claim under section 1981 by name. (Defs.' Reply at 8–11). "[N]ew claims not specifically asserted in the complaint may not be considered by courts when deciding a motion to dismiss." *Bernstein v. City of New York*, No. 06 Civ. 895

15

(RMB), 2007 WL 1573910, at *10 (S.D.N.Y. May 24, 2007) (quoting *Lerner v. Forster*, 240 F. Supp. 2d 233, 241 (E.D.N.Y. 2003)); *see also O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y.1989) ("it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss"). However, "[a]s set forth in Federal Rule of Civil Procedure 8(d)(2), a party pleading in the alternative does not have to separately identify the statements as alternative theories in separate counts or factual allegations." *Fagan v. U.S. Carpet Installation, Inc.*, 770 F. Supp. 2d 490, 496 (E.D.N.Y. 2011). "Rather, Rule 8(d)(2) states that '[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.'" *Id.* (quoting Fed. R. Civ. P. 8(d)(2)).

Defendants argue that "plaintiffs may not rely on the facts that form the basis of their hostile work environment . . . to support the notion that they were subjected to an adverse employment action, as those facts alone do not amount to a tangible, discrete harm. (Defs.' Reply at 10) (citing *Desouza v. Off. of Child. & Fam. Servs.*, No. 18-CV-2463 (PKC)(SMG), 2019 WL 2477796, at *8 (E.D.N.Y. June 12, 2019)). Defendants' argument improperly elevates form over substance by ignoring that, under Rule 8(d)(2), Plaintiffs are not required to separately label or plead each theory of liability so long as the factual allegations plausibly support it. *See Fagan*, 770 F. Supp. 2d at 496. Unlike the impermissible assertion of new claims through briefing addressed in *Bernstein* and *O'Brien*, Plaintiffs rely solely on facts expressly pleaded in the amended complaint, which the Court may properly consider in assessing whether a hostile work environment is plausibly alleged.

16

While the Court acknowledges that Plaintiffs could have provided more clarity as to the section 1981 theories they sought to bring, the Court finds that Plaintiffs' facts as specified in the amended complaint support a plausible section 1981 hostile work environment claim. Plaintiffs explicitly alleged "Defendants created a hostile work environment which unreasonably interfered with the Plaintiffs' ability to perform their jobs" and used the phrase "hostile work environment" in their first cause of action. (Am. Compl. ¶¶ 113, 124).

The Court finds that Plaintiffs detailed a hostile work environment claim under section 1981 in sum and substance. Plaintiffs allege that Defendants used "near-daily" racial slurs, stereotyped Black employees, assigned Black employees humiliating, race-based work assignments as jokes or punishment between 2018 and 2024. (Am. Compl. ¶¶ 73–75, 97–100, 110–111). Plaintiffs have plausibly alleged "objectively severe or pervasive" conditions that they "subjectively perceive[] as hostile and abusive" on the basis of race. *Rodriguez*, 412 F. Supp. 3d 412 at 444 (quoting *Patane*, 508 F.3d 106 at 113). They detail consistently demeaning language and conduct by Defendants such that their environment was "permeated with 'discriminatory intimidation, ridicule, and insult.'" *Amaya,* 295 F. Supp. 3d 204 at 223.

Defendants argue that Plaintiffs' allegations fall short of the requisite severity and pervasiveness. (Defs.' Reply at 13). They cite to case law holding that isolated incidents of stray racial slurs and "disparaging remarks" do not establish a hostile work environment. (*Id.* at 13–14) (citing *Zucco v. Auto Zone, Inc.*, 800 F. Supp. 2d 473, 476 (W.D.N.Y. 2011)). This argument fails to account for the "totality of the circumstances" that courts must assess to determine the existence of a cognizable hostile work

environment claim. *Amaya,* 295 F. Supp. 3d 204 at 224. Such circumstances "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 21). When Defendants' language is considered as just one aspect in their "entire course of conduct," *Rasmy*, 952 F.3d at 388, the "near daily" frequency of offensive comments based on race, assignment of physically humiliating tasks to Black workers unreasonably hindered Plaintiffs' performance.

Plaintiffs have met the requirement for a *prima facie* hostile work environment claim under section 1981. Accordingly, Defendants' motion to dismiss Plaintiffs' section 1981 hostile work environment claim is denied.

B. Plaintiffs' State and City Law Claims

a. Plaintiffs' NYSHRL and NYCHRL Claims are Timely

Plaintiffs bring race discrimination, national origin discrimination, and retaliation claims under NYSHRL and NYCHRL. Defendants contend that *all* of Plaintiffs' NYSHRL and NYCHRL claims arising prior to October 1, 2021, should be dismissed as untimely because some of the allegations in Plaintiffs' amended complaint pre-date October 1, 2021, or do not state a time frame. (Defs.' Mem. at 11–13).

Claims brought under NYSHRL and NYCHRL must be raised within three years of the alleged discrimination. *E.E.O.C. v. Bloomberg L.P.,* 967 F.Supp. 2d 816, 831 (S.D.N.Y. 2013) (citing N.Y. C.P.L.R. § 214; N.Y.C. Admin. Code § 8-502(d)). However, the continuing violation doctrine provides that "if a plaintiff has experienced a continuous practice and policy of discrimination, [] the commencement of the statute of limitations

period may be delayed until the last discriminatory act in furtherance of it." *Corrado v. New York Unified Ct. Sys.*, 163 F. Supp. 3d 1, 20 (E.D.N.Y. 2016). The Court may also make the finding of a continuing violation "where specific and related instances of discrimination are permitted by the defendant to continue unremedied for so long as to amount to a discriminatory policy or practice." *Purcell v. New York Inst. of Tech. - Coll. of Osteopathic Med.*, 931 F.3d 59, 65 (2d Cir. 2019) (bracket omitted) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994). NYSHRL and NYCHRL workplace discrimination claims are covered by the continuing violations doctrine. *Cruz v. City of New York*, No. 21 Civ. 1999 (DLC), 2021 WL 5605139, at *5. (S.D.N.Y. Nov. 30, 2021) (NYSHRL); *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 212 (E.D.N.Y. 2014) (NYCHRL).

Under the federal and state laws, untimely discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire do not become actionable on their own even if related to timely discriminatory acts. *King v. Aramark Servs. Inc.*, 96 F.4th 546, 560–61 (2d Cir. 2024); *see also Gordon v. N.Y. City Transit Auth.*, No. 24-CV-3411 (JAM), 2024 WL 5217932, at *8 (E.D.N.Y. Dec. 26, 2024), *adopted by* Order dated 4/4/2025. However, a timely discrete act that is part of an ongoing practice or policy can prolong the life of otherwise time barred claims to support the timely claim. *King*, 96 F.4th at 560.

This is most easily applied to hostile work environment claims, as the very nature of such claims involves "an assemblage of discriminatory acts" that "transpire over days and years." *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), then citing *Patterson v. County of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004)). In that context, an untimely discrete act may also provide background evidence for the timely

19

hostile work environment claim. *Morgan*, 536 U.S. at 113; *see also Sooroojballie v. Port Auth. of N.Y. & N.J.*, 816 Fed. App'x 536, 543 (2d Cir. 2020) (summary order) (allowing consideration of a time barred retaliatory act to determine whether it was also based on the racial and national origin animus at the root of a plaintiff's hostile work environment claim).

"A continuing violation doctrine applies to NYSHRL claims and is coterminous with the scope of the continuing violation doctrine that applies to federal civil rights claims." *Cruz*, 2021 WL 5605139, at *5. At the motion to dismiss stage, "a plaintiff must show both that an incident of harassment occurred within the limitations period, and that this timely incident was 'part of the same actionable hostile work environment practice' as the untimely incidents." *Bright v. Coca Cola Refreshments USA, Inc.*, No. 12-CV-234 (BMC), 2014 WL 5587349, at *4 (E.D.N.Y. Nov. 3, 2014).

Defendants argue that Plaintiffs' NYSHRL claims are time-barred because they allege only discrete acts spread over several years that cannot support a continuing violation. (Defs.' Reply at 13–15). But Plaintiffs' complaint presents five years of "evidence that managers made racial jokes, performed racially derogatory acts, and used various racial epithets" against Black employees. *Morgan*, 536 U.S at 103. Defendants' termination of Plaintiffs was far from a discrete act—rather, the complaint plausibly alleges that the timely incident of Plaintiffs' termination was "'part of the same actionable hostile work environment practice' [under NYSHRL] as the untimely incidents." *Bright*,

20

2014 WL 5587349, at *4 (quoting *McGullam v. Cedar Graphics*, 609 F.3d 70, 76 (2d Cir.2010)).[4]

Accordingly, Plaintiffs' NYSHRL claims prior to October 1, 2021, are not barred from consideration.

"The reach of the continuous violation doctrine under the NYCHRL . . . is broader than under either federal or state law." *Cruz*, 2021 WL 5605139, at *5 (quoting *Ctr. for Indep. of Disabled v. Metro. Transp. Auth.*, 184 A.D.3d 197, 201 (1st Dep't. 2020) (quotation marks omitted). Under NYCHRL, time-barred discrete acts may be considered "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Dimitracopoulos*, 26 F. Supp. 3d at 212 (quoting *Fitzgerald v. Henderson*, 251 F.3d 345 at 359 (2d Cir. 2001)). In this way, NYCHRL does not draw a bright line between timely and untimely acts, whether discrete or not: a plaintiff may proffer "timely and untimely allegations [that] are connected in a meaningful way" as "part of a discriminatory policy or practice that reache[s] into the limitations period." *Munjal v. Emirates,* No. 21 Civ. 8401 (PAE), 2022 WL 204775, at *8, *10 (S.D.N.Y. Jan. 24, 2022) (citation modified).

When considered under the "more generous continuing violations doctrine . . . applie[d] to discrete acts of employment discrimination under NYCHRL," the ongoing racial slurs, stereotypes, and demeaning tasks Defendants assigned to Plaintiffs over a five-year period without remedy amount to a policy and practice of discrimination,

---

[4] As discussed in the next section, Plaintiffs make out a prima facie NYSHRL hostile work environment claim. The Court's reasoning mirrors its discussion of Plaintiffs' section 1981 hostile work environment claim.

and the continuing violation doctrine applies. *Bright,* 2014 WL 5587349, at *4. Accordingly, Plaintiffs' NYCHRL claims prior to 2021 are continuing violations, and are not barred from consideration.

### b. Plaintiffs' NYSHRL Claims Survive Dismissal

NYSHRL outlaws employment practices that discriminate on the basis of race, creed, color, and national origin, among other protected classes, at the New York State and New York City-levels. N.Y. Exec. Law § 296. The statute also prohibits employers from discharging, expelling, or "discriminat[ing] against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(a). It further bars employers from taking such discriminatory action against individuals within the protected classes because they oppose any practices outlawed by the State and City laws. N.Y. Exec. Law § 296(1).

A plaintiff alleging NYSHRL employment discrimination on the basis of race or national origin "must allege facts at the pleadings stage plausibly supporting at least 'a minimal inference of discriminatory motivation.'" *O'Quinn v. City of New York*, No. 19 Civ. 9663 (LTS) (RWL), 2021 WL 4429787, at *8 (S.D.N.Y. Sept. 27, 2021) (quoting *Littlejohn*, 795 F.3d at 311). An inference of discrimination may arise from circumstances including, but not limited to, "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus.*" Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 436 (S.D.N.Y. 2015) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.,* 92 F.3d 81, 91 (2d Cir.1996)).

Defendants argue that "with the exception of their terminations," Plaintiffs fail to allege a *prima facie* NYSHRL claim. (Defs.' Mem. at 12–13). However, Defendants'

22

"criticism of the plaintiff's performance in ethnically degrading terms . . .invidious comments about others in the employee's protected group; [and] the sequence of events leading to the plaintiff's discharge" between 2021 and Plaintiffs' 2024 firing sufficiently allege discriminatory intent on the basis of race. *O'Quinn*, 2021 WL 4429787, at *8 (quoting *Littlejohn*, 795 F.3d at 312). Defendants' language and conduct towards Plaintiffs and other Black employees sufficiently makes out an inference of discriminatory intent for the purposes for NYSHRL. (Am. Compl. ¶¶ 43, 46, 97, 98, 100, 109–111); *Littlejohn*, 795 F.3d at 311.

Plaintiffs do not specifically name a NYSHRL hostile work environment theory in the amended complaint, first making explicit mention of it in their brief in opposition to the motion to dismiss. (Pl.'s Opp'n at 16–17). As in the Court's discussion of Plaintiffs' section 1981 hostile work environment claim, *Fagan* applies: Plaintiffs' pleading of an alternative NYSHRL hostile work environment claim "does not have [to] separately identify the statements as alternative theories in separate counts or factual allegations." *Fagan*, 770 F. Supp. 2d at 496. The facts upon which Plaintiffs' NYSHRL hostile work environment claim are detailed at length in the amended complaint. Accordingly, the Court finds that Plaintiffs offer ample evidence of an NYSHRL hostile work environment claim, stating the same pattern and type of discrimination based on race between 2019 and 2024. (Pl.'s Opp'n at 16–17; Am. Compl. ¶¶ 43, 46, 97–100, 109–111).

"Under the NYSHRL, individual liability may be imposed if '(1) a defendant has an ownership interest in the employer or, alternatively, has the authority to hire or terminate its employees; or (2) if a defendant aided and abetted the unlawful discriminatory acts of others.'" *Mitura v. Finco Servs., Inc.*, 712 F. Supp. 3d 442, 460–61 (S.D.N.Y. 2024)

23

(quoting *Chen v. Shanghai Café Deluxe, Inc.*, No. 17 Civ. 2536 (VF), 2023 WL 2625791, at \*4 (S.D.N.Y. Mar. 24, 2023). However, an individual must "actually participat[e] in the conduct giving rise to a discrimination claim." *Chen,* 2023 WL 2625791, at \*4. "Although the NYCHRL does not require an ownership interest or the authority to make employment decisions, a plaintiff must still show that the individual actively participated in the discriminatory conduct." *Mitura,* 712 F. Supp. 3d at 461. Plaintiffs have adequately alleged individual liability under the NYSHRL because Sam and Nouman personally participated in the discriminatory conduct at issue by directing, endorsing, or carrying out the racially hostile actions and termination decisions forming the basis of Plaintiffs' claims. (Am. Compl. ¶¶ 43, 46, 97–100, 109–111).

Accordingly, Defendants' motion to dismiss Plaintiffs' NYSHRL claims is denied.

c.  <u>Plaintiffs' NYCHRL Claims Survive Dismissal</u>

NYCHRL section 8-107 provides that "[i]t shall be an unlawful discriminatory practice: a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, [or] national origin . . .  of any person […] [t]o refuse to hire or employ or to bar or to discharge from employment such person." N.Y.C. Admin. Code  § 8-107(1)(a)(2).  It  further  bars  "discrimination  against  such  person  in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a)(3).

"Courts must analyze NYCHRL claims separately and independently from any federal and state discrimination claims." *Jones-Cruz v. Rivera*, No. 19 Civ. 6910 (PGG), 2021 WL 965036, at \*10 (S.D.N.Y. Mar. 14, 2021) (citation and brackets omitted); *see also Thompson v. New York City*, No. 12 Civ. 8034 (PAE), 2013 WL 6409326, at \*12

24

(S.D.N.Y. Dec. 9, 2013) ("Claims under the City HRL must be reviewed independently from and more liberally than their federal and state counterparts.") (citation and brackets omitted).

"Under the NYCHRL 'the plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason." *Rightnour v. Tiffany & Co.*, 354 F. Supp. 3d 511, 522 (S.D.N.Y. 2019) (quoting *Mihalik v. Credit Agricole Cheuvreux North Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013)). The facts laid out in the amended complaint meet this standard. Plaintiffs plausibly allege that Defendants subjected employees with above-average performance to targeted, discriminatory language and conduct on the basis of race. (Am. Compl. ¶¶ 73–75, 97–100, 110–111).

The NYCHRL provides for individual liability in discriminatory employment practices. *Feingold v. New York*, 366 F.3d 138, 158–59 (2d Cir.2004) "To establish individual liability under the NYSHRL and NYCHRL, 'a plaintiff must plead and prove that a defendant was personally involved in the violation.'" *Latif v. City of New York*, No. 20 Civ. 8248 (AT), 2024 WL 1348827, at *5 (S.D.N.Y. Mar. 28, 2024) (citation omitted). Sam and Nouman were both managers at Mega Elevator and had the authority to "terminate, and affect the terms and conditions of Plaintiffs' employment." (Am. Compl. ¶¶ 17–18, 23–24). Sam and Nouman's personal use of negative stereotypes, language, and conduct against Plaintiffs, who are Black, meets this requirement and support an inference of racially discriminatory motive.

Even under the NYCHRL individual liability standard, "a plaintiff must plausibly allege that he was subjected to unequal treatment because of his protected characteristic." *Kartm v. New York City Health & Hosps. Corp.*, No. 17 Civ. 6888 (ATO)

25

(OTW), 2020 WL 2999228, at *6 (S.D.N.Y. June 4, 2020). Plaintiffs' complaint against Sam and Nouman passes muster because it extensively "allege[s] facts from which a court can infer that the complained-of conduct "is caused by a discriminatory motive." *Id.* (quoting *Mihalik*, 715 F.3d at 110). Indeed, Sam and Nouman's personal assignment of purposeless tasks to Black employees and their repeated, denigrating comments towards and about Black employees provide an abundant record to infer Defendants' discriminatory aim. (Am. Compl. ¶¶ 73–75, 97–100, 110–111).

Accordingly, Defendants' motion to dismiss Plaintiffs' NYCHRL claims is denied.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6) and **DENIES** Defendants' motion to stay proceedings with respect to Plaintiffs' section 191 claims.


SO ORDERED.


/s/ Ramón E. Reyes, Jr.

RAMÓN E. REYES, JR.
United States District Judge

Dated: March 30, 2026
        Brooklyn, NY